FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.

99 JAN 15 AM 10: 52

RICHARD T. MARTIN
CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KENNETH R. THOMPSON

CIVIL ACTION

VERSUS

NUMBER 98-824-B-M2

STEPHEN R. WILSON, FRANK L.
LETEFF, AND FOSTER SANDERS

JUDGE_____

## MEMORANDUM IN OPPOSITION TO MOTIONS TO DISMISS FILED BY
## DEFENDANTS WILSON AND LETEFF

Defendants have broken down their arguments into three parts A, B, and C. Plaintiff will try to respond in order of defendants arguments.

A. No power to review state court decision.

The defense makes a claim that this Court has no power to review a state Court decision. That is not what the plaintiff is requesting of this Court. Plaintiff is requesting that this Court determine if Thompson's right to fair and equal treatment under the Law was abridged in the State Court. He is additionally asking the court to determine if his right to due process was abridged in the State Court. This Court cannot and plaintiff is not asking the Court to review the State case. Any ruling that this Court may make on the State case will not have the effect of remanding it back to State Court. Plaintiff is requesting that this Court hear a claim based upon a violation of 42 U.S.C.A. § 1983 which provides for a civil action against anyone who, under color of any statute, ordinance, regulation, custom or usage of any state, causes another to be deprived of any rights, privileges, or immunities secured by the constitution and laws of the United States. Plaintiff in the petition alleges that Leteff, Wilson and Judge Sanders jointly employed state action and acted under color of a Louisiana statute when they conspired to, and then deprived Thompson of equal

CC: FJP

treatment under the law and due process of the law by using and abusing the power vested in the office that was entrusted to then Judge Sanders  This power was abused when Sanders conspired with Leteff and Wilson to grant a summary judgment to Leteff, with all three of them knowing full well that such a summary judgment ruling in Leteff's favor was fraudulent and lacking any legal support whatsoever.  Whatever other judicial action may constitute "state action," for purposes of alleging constitutional deprivation in claim for relief under 42 U.S.C.A. § 1983 failure of procedural due process does.  Dahl v. Akin 630 F.2d 277 (5th Cir. 1980).    Their actions denied Thompson equal treatment under the law and denied Thompson due process of the law.  U.S. Constitutional Amendment XIV.

In support of their motion to dismiss on the grounds that this Court has no power to review the State Court decision the defense cites three cases which have no relevance to the case before this Court.  Hagerty v. Succession of Clement 749 F.2d 217 (5th Cir. 1984) is a case in which the plaintiff alleged that the Orleans Parish Civil District Court in Louisiana denied him due process of law when he was denied him a fourth continuance in a probate case that had been delayed already three years by the three previous continuances.  In Hagerty, Orleans Parish Civil District Court, had discretion concerning the matter of granting or denying the first continuance and it was well within its discretion to deny a fourth continuance.  In addition, in Hagerty the plaintiff named no defendant that he could make a claim against.  In this case all three defendants knew full well that La. C.C.P. Art. 966 and all case law proscribed the granting of a summary judgment in the underlying case. To begin with, all of the material factual allegations that were pleaded in the petition were denied by Leteff in his answer to the complaint.  Petition attached.    In none of the pleadings offered by Leteff did he admit to any of the material  factual allegations.  The case was rife with issues of

Page 2 of  12

material fact. Leteff did file affidavits with the motion for summary and admitted in his brief to the First Circuit Court of Appeals that the affidavits were not relevant to the motion. Leteff did not even bother to file an affidavit giving his own personal explanation or interpretation of the facts of the case. Thompson filed three affidavits with the court in opposition to the motion for summary judgment including the affidavit of an expert witness. Randall Hunter is a well-respected local attorney who swore in his affidavit that Leteff had been negligent and that Leteff's negligence had risen to such a level that he considered it Legal Malpractice. In Thompson's own personal affidavit that was filed in the original case in opposition to the summary judgment, Thompson swears that Leteff lied to him about who was to be called as witnesses at trial and about the scope of the investigation that Leteff was supposed to have completed pre-trial. Affidavits attached. Sanders never considered the affidavits before making his decision. Before any argument was allowed at the hearing on the motion for summary judgment Judge Sanders delivered his decision. The affidavits were not filed with the court until moments after Sanders ruled and the memorandums submitted did not contain any reference to them. In addition to expert witness Randall Hunter, Thompson had two well-respected local attorneys ( J. Arthur Smith, III, and Jesse Hearrin, III) who were litigating the matter on his behalf.

Following is the statutory law and case law that governed summary judgment at the time the motion was filed and at the time that the motion was ruled on by Sanders: A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Quachita National Bank in Monroe v. Gulf States Land & Development, Inc., 587 So. 2d 1115 (La. App. 2nd Cir. 1991). A motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories, admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. Art. 966; Penalbur v. Blount, 550 So. 2d 577 (La. 1989). The burden of proof in a motion for summary judgment is on the mover to establish that there is no genuine issue of fact. Nichols v. Nichols, 556 So. 2d 876 (La. App. 2nd Cir. 1990) citing Sanders v. Hercules Sheet Metal, Inc., 385 So. 2d 772 (La. 1980).

Inferences to be drawn from the underlying facts contained in the material before the court must be viewed in the light most favorable to the party opposing the motion. The party opposing a motion for summary judgment must receive the benefit of the doubt when its assertions conflict with those of the movant. Schroeder v. Board of Supervisors, 591 So. 2d 342 (La. 1991).

On a motion for summary judgment, it must first be determined that the supporting documents presented by the moving party are sufficient to resolve all material issues of fact, failing which the motion should be denied. Arnold v. Our Lady of the Lake Hospital, 563 So.2d 1056 (La. App. 1st Cir. 1990). In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Smith v. Our Lady of the Lake Hospital, 639 So. 2d 730 (La. 1994).

Summary judgment procedure is seldom appropriate in negligence cases in which the decision turns on a determination of whether or not a defendant's conduct constitutes a tort. Such a determination usually involves a factual dispute. Butler v. Landry, 602 So2d 1013 (La. App. 1st Cir. 1992), citing Bertrand v. Howard Trucking Co., Inc., 406 So2d 271 La. App. 3rd Cir. 1981). An action for legal malpractice normally states a cause of action in tort and is subject to the one year prescriptive period provided by LSA-C.C. 3492. Gifford v. New England Reinsurance Corp., 488 So2d 736 (La. App. 2nd Cir. 1986). Summary judgment is not appropriate for the disposition of a

case in which the ultimate decision will be based on opinion evidence. Morgan V. Cambell, Cambell & Johnson 561 Soj2d 926 (La. App. 2nd Cir. 1990) Citing Dixon v. Perlman, 528 So2d 637 (La. App. 2nd Cir. 1988); Verret v. Cameron Telephone Co., 417 So2d 1319 (La. App. 3rd Cir. 1982), writ denied 422 So2d 164 (La. 1982). Expert testimony is admissible to establish the standard of care exercised by attorneys in the locality. Morgan supra, citing Dixon supra; Watkins v. Sheppard, 278 So2d 890 )La. App. 1st Cir. 1973).

It was Leteff's burden to establish the absence of genuine issues of fact. Nichols v. Nichols, supra. The allegations which were contained in Thompson's state petition and affidavits should have been taken as true and received the benefit of the doubt particularly in light of the fact that Leteff admittedly filed nothing relevant in support of the motion. Schroeder v. Board of Supervisors, supra.

Judge Sanders in his oral reasons for judgment ruled that in the underlying matter Leteff had "made a reasonable presentation to the jury." Ruling attached. To rule on this material factual issue Sanders had to weigh the evidence and make a factual determination. This is not an appropriate determination to make on a summary judgment. Smith v. Our Lady of the Lake Hospital, supra.

In that legal malpractice action, which is a tort, responsibility to weigh evidence and make factual determinations rests with the fact finders. Gifford v. New England Reinsurance Corp., supra. Thompson had requested a jury trial.

Judge Sanders in his oral reasons for judgment ruled **"there was no malpractice in this matter. Now the Court acknowledges that there are disputed opinions as to this."** As shown above summary judgment is not appropriate for the disposition of a case in which the ultimate decision will be based on opinion evidence. Morgan v. Cambell, Cambell, & Johnson, supra.

The rulings by Sanders broke every law governing summary judgments in La. at the time as outlined above. He also broke every rule of Courtroom procedure that Judges are supposed to uphold in the name of Justice and the Constitution. Sanders put on many hats in his courtroom and assumed many roles. First he is an expert witness and "testifies" that in his opinion there is no legal malpractice. Next he usurped the fact finder's role and decided that Leteff put on a reasonable presentation to the jury in the underlying matter and finds his own expert opinion to be true. Then he assumes the jury's duty to deliberate before he delivers the verdict. He carried out all those roles and duties before hearing oral argument or becoming aware of the contents of the affidavits that were filed seconds after his verdict. Sanders, Wilson and Leteff together made a mockery of and perverted the judicial process when they set up and used this "Kangaroo Court." It is to be noticed that neither Wilson nor Leteff in either memorandum submitted to this Court attempt to legally justify the Sanders ruling. That is because the ruling was clearly illegal and identifies Louisiana as a backwater State still stuck in the 1800's when "good ole boys" and cronyism made § 1983 necessary.

The other two cases cited by defendants in support of the notion that this Court has no power to review the state Court decision are Howell v. State Bar of Texas, 710 F.2d 1075 (5th Cir. 1983) and Sawyer v. Overtone, 595 F.2d 252 (5th Cir. 1979). In both of those cases the plaintiffs are attorneys and were asking the U.S. District Court to review the State Courts Disciplinary actions taken against the plaintiff lawyers and asking that the Disciplinary Code used to review attorney behavior and admittance to the State Bar be reviewed for Constitutional flaws. Once again Thompson is not asking that this Court review the action taken by the State District Court, but to determine if his rights to equal protection and due process under the law were abridged in the

procedure taken by the State Court Judge Sanders, Wilson and Leteff.

There are many Federal cases that stand for the proposition that this Court has jurisdiction to proceed with this case and that plaintiff has a cause of action that can be heard before this Court. Dennis v. Sparks 101 S.Ct. 183 (1980) is one. In Dennis, plaintiffs claimed that an injunction, had been corruptly issued as the result of a conspiracy between the judge and the other defendants, thus causing a deprivation of property without due process of law. The Supreme Court held: "The action against the private parties accused of conspiring with the judge is not subject to dismissal. Private persons, jointly engaged with state officials in a challenged action, are acting "under color" of law for purposes of § 1983 actions. And the judge's immunity from damages liability for an official act that was allegedly the product of a corrupt conspiracy involving bribery of the judge does not change the character of his action or that of his co-conspirators. Historically at common law, judicial immunity does not insulate from damages liability those private persons who corruptly conspire with a judge".

Nesses v. Shepard 68 F3d 1003 (7th Cir. 1995). Nesses involved an allegation of conspiracy between lawyers and a state judge to engineer plaintiff's defeat in certain ongoing state court litigation. "To put it another way, reliance upon the adverse decision of the state court was necessary to show not that the state judge's decision was wrong but rather that the conspiracy between the lawyer and the state judge to obtain favorable rulings for plaintiff's opponent in the state court litigation had caused plaintiff harm". Quoted from Spencer v. Steinman 968 F.Supp 1011 (E.D.Pa. 1997). As related above plaintiff does not want this Court to review the State Court's decision.

Kimes v. Stone 84 F.3d 1121 (9th Cir. 1996) is another case on point. "Kimes' complaint

alleged that Judge Stone and the Attorney Defendants conspired against Kimes in estate litigation in state court to "overturn" a jury verdict, thus depriving Kimes, without due process of law, of property he would have otherwise received from his father's estate. The district court granted Judge Stone's and the Attorney Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12 (b)(6), relying on Cal.Civ.Code §47(b), which immunizes parties involved in litigation from civil liability for communications made in the course of that litigation". " We find, however, that the district court erred in applying Cal.Civ.Code § 47(b) as a bar to Kimes' §1983 claim against the Attorney Defendants, and finding no other basis for affirming the district court, we reverse the dismissal in favor of the Attorney Defendants". Kimes supra.

Lipson v. Snyder 701 F.Supp. 541 (E.D.Pa. 1988) is another case on point. Defendants moved for dismissal under Fed.R.Civ.P. 12(b)(6). Plaintiffs in Lipson alleged that the defendants, a state court judge and two attorneys, discussed trial tactics and conspired to produce a verdict in the state case based on extrajudicial considerations. The court ruled that: "Plaintiffs have alleged conspiratorial conduct under color of state law. They have alleged a procedural due process violation that is not barred by the Parratt v. Taylor and Hudson v. Palmer. Consequently, they have adequately alleged a violation of 42 U.S.C. section 1983. Defendant's motion to Dismiss for Failure to State a Claim will be denied".

See also: Bello v. Walker, 840 F2d 1124 (3rd Cir. 1988), Ward v. Monroeville, 409 U.S. 57 (1972).

It is clear that plaintiff in the case at hand has demonstrated that this case should be heard by this Court. While it might be true that Thompson would not be before this Court if the Motion for Summary Judgment in State Court had been denied it is also true that a cause of action has been

alleged that this Court has jurisdiction over and that this is the kind of state action that 42 U.S.C.A.§ 1983 is designed to protect the citizens of the United States from.

B. Joint activity.

This section of the defendants memorandum is completely without merit. Defendants suggest in their memorandum that "there has been no joint activity, much less a conspiracy". Whether or not there was a conspiracy is an issue of fact for the fact finder not an issue to be dealt with on a motion to dismiss for failure to state a cause of action.

C. Failure to properly plead a claim.

Defendants in their brief take the stance that: "Thompson concluded that he has been deprived of equal protection and treatment under the law and due process, but has not stated how the resolution of legal malpractice law suit has deprived him of those rights, and moreover, precisely what rights he has lost". It is alleged in the petition: "Leteff, Wilson and Judge Sanders employed state action when they used and abused the power of Judge Sanders, acting in his capacity as State judge, to grant and sign the Motion for Summary Judgment in Suit No. 389,528, that all three defendants knew or should have known had no basis in Law. Leteff, Wilson and Judge Sanders were jointly engaged and were joint participants and acted under color of Louisiana State Code of Civil Procedure Article 966 to deprive Thompson of Equal Protection and Equal Treatment under the law. Leteff, Wilson and Judge Sanders were jointly engaged and were joint participants and acted under color of Louisiana State Code of Civil Procedure Article 966 to deprive Thompson of due process of law". Paragraphs 17 and 18 of the petition. Due process of law as defined by Black's Law Dictionary 6th Edition: "Law in its regular course of administration through courts of justice. Due process of law in each particular case means such an exercise of the powers of the

government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs". All that plaintiff wanted and expected was to have the well-established Law on summary judgment applied to him as it would be applied to anyone else in a Louisiana Court of Law. As alleged in the petition the summary judgment signed by Sanders had no basis in Law. Paragraph 17 of the petition. "Equal protection clause. This clause requires that persons under like circumstances be given equal protection in the enjoyment of personal rights and the prevention and the redress of wrongs. Black's Law Dictionary 6th Edition. Thompson expected and deserved to be given equal protection of his rights to an unbiased Judge who would apply the well-established Laws governing summary procedure equally to all.

A summary judgment is a final judgment that determines the rights of the parties in an action and may award any relief to which the parties are entitled. La. C.C.P. Articles 966 and 968. When Judge Sanders signed the judgment granting summary judgment he denied Thompson the right to a fair trial. The summary judgment precluded Thompson from pursuing any further legal action in Louisiana State Courts for the damages that he sustained as a result of Leteff's legal malpractice.

Next the defendants want to know "what class of individuals does Thompson fall which has been treated differently than others"? Federal Statute 42 U.S.C.A § 1983 does not require that someone be a member of a class.

Next defendants claim not to know what due process has been lost, procedural or substantive. Procedural due process was abridged when defendants conspired to and corruptly, intentionally and illegally misused La. C.C.P. Art. 966. The procedural due process was also

corrupted when Sanders set himself above the law and acted as an expert witness and the finder of fact when a jury was requested. He also perverted the legal when he assumed the jury's role of deciding the verdict. Substantive due process was denied when Thompson was denied the right to the damages that he sought in the legal malpractice case. "The essence of substantive due process is protection from arbitrary and unreasonable action. Such may be broadly defined as the constitutional guarantee that no person shall be arbitrarily deprived of his life, liberty or property. Definition of (Substantive Due Process). Black's Law Dictionary 6th Edition. "Plaintiffs first cite Bello v. Walker, 840 F.2d 1124 (3rd Cir. 1988) in which the Third Circuit wrote that certain Supreme Court "cases reveal that the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process". Lipson v. Snyder 701 F.Supp. 541 (E.D.Pa. 1988). Citing: Danuiels v. Williams, 474 U.S. 327 (1986), Davidson v. Cannon, 474 U.S. 344 (1986), Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252 (1977).

In deciding a motion to dismiss for failure to state a claim, the Court must "take all well-pleaded facts as true, and extend the plaintiff "every reasonable inference in his favor. A Rule 12(b)(6) dismissal is appropriate only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory". MacFarlane v. Smith 947 F.Supp. 572 ( D.N.H. 1996). Citing: Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F.2d 15 (1st Cir. 1992), Dorrea-Martinez v. Arrillaga-Belendez, 903 F.2d 49 (1st Cir. 1990)

For the above reasons defendants motion should be denied.

Respectfully Submitted:

Kenneth R. Thompson
24876 Spillers Ranch Road

Denham Springs, Louisiana 70726
(504) 665-0560

## CERTIFICATE

I HEREBY CERTIFY that a copy of the above and foregoing was mailed this date, postage

prepaid, to counsel for the defendants.

Denham Springs, Louisiana, this __15th__ day of January, 1999.

Kenneth R. Thompson
24876 Spillers Ranch Road
Denham Springs, Louisiana 70726
(504) 665-0560

604 80452000

KENNETH THOMPSON     *     NO. 389,528 A

VS.     *     19TH JUDICIAL DISTRICT COURT

    *     PARISH OF EAST BATON ROUGE

FRANK LETEFF     *     STATE OF LOUISIANA

### ORAL REASONS FOR JUDGMENT

### RENDERED ON MONDAY, NOVEMBER 27, 1995

### THE HONORABLE A. FOSTER SANDERS, III, JUDGE PRESIDING

BY THE COURT:

THIS CASE PRESENTS AN INTERESTING PRESENTATION OF
DISPUTE WHERE A LAWYER IS SUED FOR MALPRACTICE FOLLOWING A
LOST TRIAL. ALTHOUGH SUMMARY JUDGMENTS ARE DISCOURAGED WHERE
THERE ARE QUESTIONS OF FACT WHERE THERE IS A LARGE AMOUNT OF
DISCRETION AS TO WHAT WITNESSES TO CALL OR COULD HAVE BEEN
CALLED AT ANY GIVEN MATTER, THIS TRIAL COURT HAS TO BALANCE
REASONABLE CONSIDERATIONS AND LEGAL DETERMINATIONS VERSUS THE
OPENING OF THE BOX, PANDORA'S BOX, THAT WOULD LEAD TO A
REVIEW TIME AND TIME AGAIN OF EVEN PERHAPS THIS COUNSEL'S
EFFORT IN TRYING TO PROVE THE MALPRACTICE OF THE LAST
COUNSEL. HOW MANY LAWYERS ARE YOU GOING TO CALL IN THIS CASE
TO SHOW THAT IT WAS NEGLIGENT? IN THIS CASE THOMPSON WAS
TRAVELING WEST IN THE LANE OF TRAVEL WHEN HE HIT AN UNLIT
PARKED CAR BELONGING TO WEBER. APPARENTLY, THERE WERE
SEVERAL INCONSISTENCIES FROM THE POLICE OFFICER AND WEBER AS
TO WHETHER OR NOT THE CAR WAS PARKED WITHIN 18 INCHES TO THE
CURB BECAUSE THE JURY ASKED TO HEAR THE OFFICER'S TESTIMONY
AGAIN. THE JURY ULTIMATELY BELIEVED MR. WEBER AND HELD NO
LIABILITY. PLAINTIFF TOOK A DEVOLUTIVE APPEAL TO THE FIRST
CIRCUIT ON MARCH 3, 1993, AND THE JUDGMENT WAS AFFIRMED ON
APRIL 28, 1993, WRIT WAS DENIED ON SEPTEMBER 3, 1993, BY A
VOTE OF SEVEN TO ZERO. THE COURT FEELS THAT THIS MATTER IS
ULTIMATELY A LEGAL QUESTION. BASED ON THE RECORD, DID THE
LAWYER MAKE A REASONABLE PRESENTATION TO THE JURY FROM WHICH

FILED

19th JUDICIAL DISTRICT COURT

THEY COULD GLEAM THE ISSUES AND MAKE A REASONABLE
DETERMINATION AND FOR THAT LIMITED BASIS, THIS COURT FINDS AS
A LEGAL MATTER, BASED ON THE FACTS THAT I HAVE BEFORE THIS
COURT, THAT THERE WAS NO MALPRACTICE IN THIS MATTER.  NOW,
THE COURT ACKNOWLEDGES THAT THERE ARE DISPUTED OPINIONS AS TO
THIS, BUT, ULTIMATELY, THE COURT VIEWS IT AS THE ONE OF LEGAL
AND COURT DETERMINATION, NOT LAWYERS.  YOU CAN COUNT NOSES
ALL DAY LONG AND YOU CAN COUNT THEM ON MY DECISION.  LASTLY,
LET ME SAY THAT IF THE COURT OF APPEAL WANTS TO DO THIS, I
HOPE THEY WILL READ MY DECISION REAL CAREFULLY AND LET US
KNOW IN ADVANCE HOW MANY LAWYERS OUGHT TO BE CALLED ON THIS
MALPRACTICE CASE.  I'LL SIGN A JUDGMENT WHEN SUBMITTED.

                              *

                              *

                              *

                              *

KENNETH THOMPSON                    NUMBER 389,528 DIVISION "A"

                                    19TH JUDICIAL DISTRICT COURT

VERSUS

                                    PARISH OF EAST BATON ROUGE

FRANK LETEFF                        STATE OF LOUISIANA

## J U D G M E N T

This matter came on for hearing pursuant to previous assignment on Motion for

Summary Judgment filed on behalf of defendant, Frank Leteff.    Present in Court:

Stephen R. Wilson, attorney for defendant/mover, Frank Leteff; Jesse B. Hearin, III,

attorney for plaintiff/defendant in rule, Kenneth Thompson.

The Court considering the evidence entered of record, memoranda and argument

of counsel, and for oral reasons this day assigned,

**IT IS ORDERED, ADJUDGED AND DECREED** that the Motion for Summary

Judgment filed on behalf of defendant, Frank Leteff, be and the same is hereby granted,

dismissing plaintiff's claims with prejudice and at plaintiff's costs.

**JUDGMENT RENDERED** this 27th day of November, 1995.

~~JUDG~~GMENT  **READ  AND  SIGNED**  this  ___6___  day  of

___Dec___, 1995, at Baton Rouge, Louisiana.

**FILED**

DEC 06 1995

E. Knight

DY. CLERK OF COURT

_____
**JUDGE, 19TH JUDICIAL DISTRICT COURT**

I hereby certify that on this day a notice of the
above judgment was mailed by me, with sufficient
to affixed, to: Thompson, Wilson, Smith

made and signed on 12-8-95

E. Knight

Deputy Clerk of Court

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

## A F F I D A V I T

BEFORE ME, came and appeared

### KENNETH BROWNING

who, being duly sworn, did depose and state as follows:

I was the employer of Ken Thompson at the time of accident which was the basis of the lawsuit **THOMPSON v. OMNITECH, INCORPORATED**. Ken Thompson called me to tell me he would not be able to work the next day and I went and picked him up. I arrived after Ken had sought medical treatment and drove Ken back to the scene of the accident before any cars involved had been moved or towed.

On the ride to accident scene, I was thinking to myself, "how could Ken have hit a parked car?" Once I got to the scene, I understood why Ken had collided with the car. It was obvious to me, from the position of the cars and the point of impact, that the car that Ken struck had been parked substantially out in the travel portion of Robin Hood Drive. The car was parked in a dark area. The combination of the location of the parked car and the lack of lighting in the area made it clear to me that the parked car had presented a hazardous situation that helped cause the accident. I even heard a neighbor state that Mr. Weber had parked his car in the street in an effort to slow traffic down.

I was called as a witness at Ken Thompson's trial. Mr. Frank Leteff interviewed me regarding Ken's employment history and his inability to work after the accident. I testified at the original trial as to these matters. I made Mr. Leteff aware, prior to trial, that I had knowledge of the scene on the night in question and the substance of my knowledge.



PLAINTIFF'S
EXHIBIT
B
1 of 3

I was not asked any questions at trial regarding what I had witnessed at the scene, I was not asked any questions about the lighting in the area, the location of the vehicles after impact, the point of impact on the vehicles or the weather conditions on the night in question. I was willing and able to testify to the above facts, if asked to, at the original trial.

_Kenneth Browning_
KENNETH BROWNING

SWORN TO AND SUBSCRIBED before me this 21st day of November, 1995.

_Jere B. Hearn III_
NOTARY PUBLIC

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

## A F F I D A V I T

**BEFORE ME,** the undersigned Notary Public, personally came and appeared

## KEN THOMPSON

who, being by me first duly sworn, did depose and state as follows:

I retained attorney Frank Leteff to represent me in the matter styled, "Kenneth Thompson

v. Omnitech International, Incorporated." The lawsuit involved an auto collision in which

was seriously injured. On the day of trial, an offer of $35,000 was transmitted to me by Mr

Leteff, which I rejected. Mr. Leteff appeared to agree with my decision to reject the offer.

When trial began it became apparent that Mr. Leteff was woefully unprepared. He ha

not subpoenaed several key witnesses and did not even ask all the appropriate questions of those

witnesses who were present. He failed to subpoena several witnesses from the neighborhood

who could have rebutted substantial portions of the defendant's testimony.

The trial was all about the location of where Mr. Weber (the defendant) parked his car

The police officer who investigated the accident and I both testified that the car was parked wel

out into the street, far in excess of eighteen (18") inches from the curb. This testimony wa

rebutted only by the self-serving testimony of Mr. Weber who claimed his car was parked o

the grass or adjacent to curb. He based his testimony upon the fact that he "always parked hi

car that way" and that there was a small rut in his yard which revealed where he habituall

parked his car.

When the jury retired to deliberate, they came back and asked to hear the testimony (

the police officer again. It was apparent to all concerned that the jury was weighing th

evidence on the location of Mr. Weber's car. The case came down to a credibility call betwee

myself and the investigating policeman versus Mr. Weber.

Mr. Leteff failed to produce readily available evidence which, if presented to the jury

would have exposed the weakness of Mr. Weber's testimony and bolstered my testimony ar

that of Officer Browning.

First, Kenneth Browning, (my employer) who was called at trial, was not asked are

questions regarding the position of the automobiles after impact. In fact, Mr. Leteff never aske

Kenneth Browning what he knew about the accident, either in preparation for trial or at the trial itself. Kenneth Browning would have testified that the location of the automobiles supported my claim that Mr. Weber parked his car well into the street in violation of the City of Baton Rouge ordinances. (See Kenneth Browning's affidavit). Kenneth Browning further would have testified, **if asked**, that there was no overhead lighting at the scene of the accident, further supporting the police officer's testimony as well as my testimony.

Secondly, Mr. Leteff failed to call any of the neighbors who were available to rebut Mr. Weber's claim that he parked his car in the street because there were bicycles in his driveway and that he parked it adjacent to the curb and/or on the grass.

Mr. Randy Wesley would have testified (if he had been subpoenaed) that Weber parked his car well out in the street as a method of slowing traffic down. Further, Wesley would have cast doubt on Weber's story that he only parked in the street because his children's bicycles were in his driveway.

Wesley would have testified that he had called the police twice prior to the accident to have Weber's car moved because of its dangerous location. Wesley would have testified that Weber's car was "more of a hazard than anything else" and it's "definitely parked what I thought was illegally in front of Burgess Circle." Wesley would have testified that Weber "always parked his car in the **travel lane** of traffic" and that if he (Wesley) "was coming up to him at night and it was raining, coming up to that car as dark as it is, pulling up behind him, I wouldn't know if the car was stationary or moving."

Finally, Wesley would have corroborated my testimony and that of the police officer which supported the key issue of whether overhead lights were present. He would have directly contradicted the entire defense of Weber by stating that "people have to wait behind the car while the other lane of traffic comes down, and then pull out around him." This shows that the car was regularly parked in the travel portion of the road. Wesley's statement that "[even I know it's there and a lot of times I have to make special efforts to move around it," would have refuted the main thrust of Weber's defense, the assertion that I was 100% at fault. Other neighbors (Mr. and Mrs. Loyd Bergeron, Mrs. Nowacki and Lisa Wesley) would have supported Randy Wesley's testimony as well.

To this day, Mr. Leteff has not given me a satisfactory reason for why he did not call

-2-

Randy Wesley, even though he represented to me all along that he would call Mr. Wesley and the other neighbors as witnesses at trial. He has given no reason whatsoever for not using the favorable testimony of Ken Browning regarding the location of the vehicles after the accident. He has not explained why he allowed Mr. Weber to misrepresent: 1) the location of his car; 2) the lighting in the area; 3) his customs regarding the parking of the vehicle; 4) his reasons for parking the vehicle in the street; and 5) the availability of less dangerous parking space readily available in Mr. Weber's yard.

Mr. Leteff's errors were compounded by the fact that he sat idly by while the defense showed pictures of a different automobile, parked within eighteen inches of the curb, to the jury without any limiting instruction whatsoever. I based my rejection of the defense's $35,000 offer upon the assumption that Mr. Leteff had subpoenaed the necessary witnesses and was prepared to try the case. His lack of preparation caused me damage to which I am entitled to be compensated for.

Due to Mr. Leteff's lack of diligence, the defendant was able to paint a false picture to the jury. It is quite obvious to me that they believed the car was parked lawfully, that it was on the street because Weber's driveway was full, that two cars could pass each other despite the parked Weber vehicle and that the location was illuminated by a working streetlight. None of the aforementioned propositions are true. With reasonable preparation, Mr. Leteff could have proved that the car was parked illegally, that it was in a dark area, that it was customarily parked in the street despite ample room in the Weber driveway and that two cars could not pass each other due to the location of Mr. Weber's parked car.

_Ken Thompson_
KEN THOMPSON

SWORN TO AND SUBSCRIBED before me this 20th day of November, 1995.

_June B. Newsom III_
NOTARY PUBLIC

-3-

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

## A F F I D A V I T

**BEFORE ME,** the undersigned notary, personally came and appeared

### RANDOLPH W. HUNTER

who, being duly sworn, did depose and state as follows:

I have been a licensed attorney for over twenty years. I graduated from LSU law school in 1974 and was ranked 13th out of approximately 300 students. I clerked for a federal judge in Alaska for two years and continued to work in Alaska until 1986, with the exception of a short stint from September of 1976 to January of 1977 at the New Orleans firm of McGlinchy, Stafford, Minson and Huffman.

I returned to Louisiana to practice law in late 1986 and accepted a job in early 1987 with a firm named Anderson and Holliday. I worked for this firm for a year and a half until my current partner, John Samaha and I formed the law firm of Hunter and Samaha in November of 1988. My present practice is a general practice with a good deal of plaintiff's medical malpractice. I have tried cases to completion in East Baton Rouge Parish and one resulted in seven figure judgment for my client.

On or about May 31, 1995 I was asked by Art Smith to review various items and, if I believed that Mr. Leteff made some mistakes, would I be willing to testify. I reviewed the trial testimony, various witness statements, jury instructions, applicable statutes and the deposition of Mr. Frank Leteff. The statements I received were given by Jim Bryant, Loyd Bergeron, Randy Wesley and Lisa Wesley to an investigator from Mr. Leteff's office. I also looked at various photos that were entered into evidence at trial and reviewed the affidavit of Ken Browning.

It is my opinion that Mr. Frank Lefeff failed to comform his behavior to the prevailing standard of care that exists in this community and get testimony at trial from Lisa Wesley, Randy Wesley, Lloyd Bergeron and Jim Bryant, either in the plaintiff's case in chief, coming in as custom and habit testimony, or in rebuttal, given the defendant's testimony during trial that he never parked his car more than a foot out in the street. The location of the vehicle (Mr. Weber's) was the crucial issue at trial and the failure to call these witnesses was below the prevailing standard of care in this community. Further, the

failure to elicit the testimony of Kenneth Browning regarding his knowledge of the actual accident scene fell below the prevailing standard of care as well.

It is my opinion that Mr. Leteff's standard of care departed from the prevailing standard in the community when he failed to object to certain jury instructions given to the jury at the behest of the defendant. Mr. Leteff should have objected to those instructions that he disagreed with in order to protect Ken Thompson's rights on appeal.

My opinion is that the accident happened on a dark, drizzly night in a residential neighborhood. Photographs were introduced by the defense at trial that depicted the street in the daytime, in sunlight, when it was dry. These photographs were not objected to nor was a limiting instruction sought by Mr. Leteff. The prevailing standard of care would be, one, to object to those photographs, and two, to actually have my own photographs for introduction into evidence that depicted the accident scene more closely to the way it existed at the actual time of the accident, i.e., photographs at night on a rainy road or a video tape from the driver's point of view at night on a rainy road.

Finally, it is my opinion that Mr. Weber's car was parked illegally in violation of Title 11 of the Baton Rouge City Ordinances. Mr. Leteff's failure to bring this out at trial as well as all the other errors mentioned above, fell below the standard of care.

I am not suggesting that Mr. Leteff is not a good attorney. However, even good attorneys, as well as good physicians, make errors.

RANDOLPH W. HUNTER

**SWORN TO AND SUBSCRIBED** before me this _21st_ day of _November_ , 1995.

NOTARY PUBLIC

**"ACTS SYSTEM"**     <u>PETITION</u>       POSTED

**1.**

The Plaintiff, Kenneth R. Thompson, a person of the full age of majority, and a resident of East Baton Rouge Parish, Louisiana, with respect, represents that:

**2.**

The Defendant, Frank L. Leteff, is admitted to the bar in the State of Louisiana, and is licensed to practice law therein. The Defendant is a resident of the State of Louisiana and maintains offices for the practice of law at 405 St. Ferdinand, Baton Rouge, Louisiana.

**3.**

The Defendant purports to be an expert in the personal injury litigation field.

**4.**

On or about January 18, 1990, Plaintiff, was driving his 1984 Toyota Celica in a westerly direction on West Robin Hood in East Baton Rouge Parish, Louisiana, when the vehicle in which he was traveling struck a 1987 Chevrolet Caprice, owned by Omnitech International, Inc. and operated by Harrison Weber, Jr. with the permission of the owner and which was improperly parked on the traveled portion of a public roadway between sunset and sunrise without proper lighting or other appropriate warning. The accident occurred on a dark rainy night at 8:00 P.M. The nearby streetlight which would have illuminated the parked vehicle was not functioning at the time.

**5.**

As a consequence of the accident, the Plaintiff sustained injuries requiring medical treatment. These injuries caused the Plaintiff mental and physical pain and suffering, past, present, and future; medical expenses, past and future; loss of wages, past and future; and property damage. As of the present date, the Plaintiff has received no compensation from any tortfeasor for the injuries and damages suffered in the accident.

**REC'D C.P.**

JAN 12 1993

35

6.

On or about January 29, 1990, the Plaintiff consulted the Defendant at his office concerning the Plaintiff's right to recover damages incurred, as a result of the injuries which he suffered in the accident, from any tortfeasor. The Plaintiff, pursuant to a contract, employed Defendant to represent him in the above described matter to the Appeal Courts if necessary.

7.

Plaintiff avers that as a direct result of Defendant's breach of contract and negligence the Plaintiff has sustained a permanen and irrevocable loss of right of action against one tortfeasor, the party responsible for maintenance of lighting at the scene, and had an adverse judgment with prejudice rendered against him pertaining to Suit Number 355,953 Div. E that the Defendant represented the Plaintiff in.

8.

As of January 5, 1993, there has been no investigation to ascertain the party responsible for the defective lighting at the accident site by the defendant even though the defective lighting was a legal and proximate cause of the accident and damages suffered by Plaintiff. There has been no demand made against the party responsible for payment of damages, and there has been no civil action filed against the party responsible to recover payment for damages for the Plaintiff by the Defendant. At the present time, prescription, acts to bar an action to recover damages from the party responsible.

9.

In failing to commence a timely action against the party responsible, the Defendant failed to exercise reasonable care, skill, and diligence in representing the Plaintiff. This failure resulted in the permanent and irrevocable loss of the Plaintiff's right of action, leaving the Plaintiff with no opportunity to obtain compensation for the injuries he suffered in the accident. The Defendant's failure to file a timely action constituted both a negligent act and a breach of his contractual obligation to the Plaintiff.

10.

Had an action been timely brought against the responsible party

3b

the Plaintiff would have recovered a judgment for personal injuries, and been compensated for his damages listed in paragraph 5.

11.

The Defendant, pursuant to the above mentioned contract, represented Plaintiff in the automobile accident described above and did file suit in the 19TH Judicial District Court, Parish of East Baton Rouge, State of Louisiana, in an action entitled and numbered Kenneth R. Thorpson v. Omnitech International, Inc. and United States Fidelity & Guaranty Company, Suit Number 355,953 Div. E. In accordance with the contract of employment Defendant agreed to faithfully and diligently represent the Plaintiff in all phases of litigation all the way to the Appeal Court if necessary.

12.

After the above mentioned Suit Number 355,953 Div. E came to trial on January 6 and 7, 1992 the jury found Harrison Weber free from fault in the accident. All demands against Omnitech International Inc. Et Al were dismissed with prejudice. As a result Plaintiff has exhausted all legal remedies against Omnitech International,Inc. Et Al.

13.

As a direct result of Defendants breach of contract and negligence, Plaintiff's petition for compensation for damages was dismissed with prejudice. Plaintiff has not received any compensation from the defendant in Suit Number 355,953 Div. E for the injuries suffered because of their negligence.

14.

Defendant could, by the exercise of due diligence and skill, have obtained a judgment favorable to Plaintiff and compensation for damages suffered by the Plaintiff as listed in paragraph 5, in Suit Number 355953 Div. E.

15.

Plaintiff avers that the Defendant breached the contract and was negligent in the representation of Plaintiff in Suit Number 355,953 Div. E, before, during, and after trial, including but not limited to the particulars listed below;

a. failing to properly familiarize himself with the facts of the case;

37

b.  failing to properly familiarize himself with the law on the case;

c.  failing to properly research the law as it applies to the case

d.  failing to properly use discovery methods;

e.  failing to properly prepare for the trial;

f.  failing to properly present petitioner's case at trial;

g.  failing to seat a proper jury;

h.  failing to properly employ jury challenges;

i.  permitting fraudulent evidence to be introduced at trial;

j.  failing to make timely objections to fraudulent evidence;

k.  failing to properly examine and cross-examine witnesses;

l.  failing to research and present legally appropriate jury instructions to the court;

m.  failing to research defendant's jury instructions;

n.  failing to present a brief in opposition to defendant's erroneo jury instructions to the court;

o.  failing to timely object to defendant's erroneous jury instructions;

p.  failing to subpeona known witnesses whose previous recorded statements rebutted the defendant's testimony;

Q.  breaching the fiduciary duty a lawyer owes his client by trying to convince Plaintiff that it would be wise to negotiate for a settlement offer after an appeal on the matter would be filed by the Defendant.  This settlement offer would repay the Defendant for his out of pocket expenses in the case;

r.  forcing the plaintiff to threaten to report his actions to the Louisiana Bar Association and threaten civil action if the Defendant did not turn over Plaintiff's case file after his withdrawal as counsel;

s.  failing to properly exercise professional conduct expected of a lawyer;

t.  any and all acts of negligence of the Defendant inherent in these proceedings which may appear at the trial or by discovery.

16.

As a direct result of the breach of contract and negligence by Defendant, Plaintiff has sustained damages as follows:

38

a. Loss of compensation for the injuries and damages suffered by Plaintiff as described in paragraph 5 from the party responsible for defective lighting at the accident site.

b. Loss of compensation for the injuries and damages suffered by Plaintiff as described in paragraph 5 from the negligence of Harrison Weber Jr.

c. Loss of compensation for the injuries and damages suffered by Plaintiff as described in paragraph 5 from the defendants in Suit Number 355,953 Div. E.

d. Mental and physical pain and suffering, past, present, and future.

e. Loss of wages, past and future.

f. Lack of compensation for Plaintiff's time, energy, and work in having to bring this action.

g. Attorney fees that Plaintiff may yet incur to prosecute this action.

h. Expenses for expert witnesses in this matter.

i. Other legal expenses to be incurred.

17.

Plaintiff alleges amicable demand to no avail.

WHEREFORE, PETITIONER, KENNETH R. THOMPSON, PRAYS:

1. For service and citation upon Defendant.

2. After due proceedings had, there be judgment in favor of Petitioner Kenneth R. Thompson, individually and against the defendant in an amount just and reasonable in the premises, together with legal interest thereon from date of judicial demand, until paid, together with all costs of these proceedings.

3. That Defendant be served with a copy of this petition and be duly cited to appear and answer same.

4. For a Trial by Jury on all issues.

5. For all general and equitable relief.

RESPECTFULLY IN PROPER PERSON:

*Kenneth R. Thompson*

KENNETH R. THOMPSON
10530 Florida Blvd. Apt. 455
Baton Rouge, Louisiana 70815
Telephone: 504-2732527

39